UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

                                                 X

THE NEW YORK TIMES COMPANY and CHARLIE
SAVAGE,

                                            :

                        Plaintiffs,

                                            :       11 Civ. 6990 (WHP)
                                                ECF CASE

                     - against -                      :

UNITED STATES DEPARTMENT OF
JUSTICE,                                           :

                                           :

                        Defendant.                  :

_____X

## MEMORANDUM OF LAW IN SUPPORT OF THE NEW YORK TIMES COMPANY'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

David E. McCraw
Vice President &
    Assistant General Counsel
The New York Times Company
620 8th Avenue - 18th Floor
New York, NY 10018
phone: (212) 556-4031
fax: (212) 556-1009
e-mail: mccraw@nytimes.com

March 26, 2012

## TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND................................................... 2

    A.    Congressional Debate on the Patriot Act and Section 215............................ 2

    B.    Mr. Savage's FOIA Request ...................................................................... 7

ARGUMENT............................................................................................................ 8

    **I.  FOIA REQUIRES THE COURT**
         **TO ENGAGE IN A *DE NOVO***
         **REVIEW OF DOJ'S DECISION**
         **TO KEEP THE MEMORANDUM SECRET** ........................................ 9

    **II.  THE GOVERNMENT HAS FAILED**
         **TO CARRY ITS BURDEN OF SHOWING**
         **THAT THE DOJ MEMORANDUM**
         **CAN BE WITHHELD UNDER FOIA** ............................................... 11

        A.  The Government's Authority to Classify Information is not Limitless
            ......................................................................................................... 12

        B.  DOJ Has Failed to Show that the DOJ Memorandum Is Properly
           Classified ......................................................................................... 15

        C.  The Possibility of Bad Faith Justifies Close Scrutiny of DOJ's
           Withholding...................................................................................... 19

    **III.  AT A MINIMUM, THE COURT**
         **SHOULD ENGAGE IN AN *IN CAMERA***
         **REVIEW OF THE DOJ MEMORANDUM**............................................ 21

CONCLUSION ..................................................................................................... 25

## TABLE OF AUTHORITIES

### *CASES*

*ACLU v. Dep't of Def.* (*ACLU*), 389 F. Supp. 2d 547 (S.D.N.Y. 2005) ..........................................9

*ACLU v. Dep't of Def.*, 396 F. Supp. 2d 459 (S.D.N.Y. 2005) ......................................................21

*ACLU v. Dep't of Def.*, 543 F.3d 59 (2d Cir. 2008) ......................................................................10

*ACLU v. Office of Dir. of Nat'l Intelligence* (*ACLU II*), No. 10 Civ. 4419 (RJS),
  2011 U.S. Dist. LEXIS 132503 (S.D.N.Y. Nov. 15, 2011) .............................13, 15, 17, 18

*Al-Fayed v. CIA*, 254 F.3d 300 (D.C. Cir. 2001) ...........................................................................10

*Associated Press v. U.S. Dep't of Def.*, 498 F. Supp. 2d 707 (S.D.N.Y. 2007)...........17, 19, 22, 23

*A.T.& T. v. FCC*, 582 F.3d 490 (3d Cir. 2009) ...............................................................................10

*Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.,* 601 F.3d 143 (2d Cir. 2010) ......10

*Campbell v. U.S. Dep't of Justice*, 164 F.3d 20 (D.C. Cir. 1998) ..................................................14

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980)..............................20

*Ctr. for Int'l Envtl.Law v. Office of U.S. Trade Representative,*
  CIV.A. 01-498 RWR, 2012 WL 640882 (D.D.C. Feb. 29, 2012) ......................................13

*Donovan v. FBI,* 806 F.2d 55 (2d Cir. 1986)..........................................................................10, 24

*El Badrawi v. Dep't of Homeland Sec.*, 583 F. Supp. 2d 285 (D. Conn. 2008) ...............18, 19, 23

*FCC v. A.T.& T.*, 131 S. Ct. 1177 (2011) ......................................................................................10

*Founding Church of Scientology of Wash., D.C. v. Nat'l Sec. Agency,*
  610 F.2d 824 (D.C. Cir. 1979).............................................................................................15

*Grand Cent. Partnership, Inc. v. Cuomo*, 166 F.3d 473 (2d Cir. 1999).........................................22

*Goldberg v. Dep't of State*, 818 F.2d. 71 (D.C. Cir. 1987).............................................................14

*Halpern v. FBI*, 181 F.3d 279 (2d Cir. 1999) ......................................................................... passim

*Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381 (D.C. Cir. 1979) ...........................24

*Jones v. FBI*, 41 F.3d 238 (6th Cir. 1994) ....................................................................................20

*Jordan v. U.S. Dep't of Justice*, 591 F.2d 753 (D.C. Cir. 1978).............................................20, 21

*Kimberlin v. Dep't of Justice*, 139 F.3d 944 (D.C. Cir. 1998) ........................................................24

*King v. U.S. Dep't of Justice*, 830 F.2d 210 (D.C. Cir. 1987) ...........................................14, 15, 16

*Krikorian v. Dep't of State*, 984 F.2d 461 (D.C. Cir. 1993) ...........................................................25

*Lawyers Comm. for Human Rights v. Immigration & Naturalization Serv.*,
    721 F. Supp. 552 (S.D.N.Y. 1989) ...................................................................10, 16, 17, 18

*Massey v. FBI*, 3 F.3d 620 (2d Cir. 1993)........................................................................................9

*McGehee v. Casey*, 718 F.2d 1137 (D.C. Cir. 1983) ......................................................................13

*Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350 (2d Cir. 2005)....................................10

*Navasky v. CIA*, 499 F. Supp. 269 (S.D.N.Y. 1980).......................................................................15

*N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975)..........................................................20, 21

*Ortiz v. U.S. Dep't of Health & Human Servs.*, 70 F.3d 729 (2d Cir. 1995) .................................10

*Ray v. Turner*, 587 F.2d 1187 (D.C. Cir. 1978)..............................................................................22

*Schiller v. NLRB*, 964 F.2d 1205 (D.C. Cir. 1992)........................................................................24

*Schwartz v. IRS*, 511 F.2d 1303 (1975) ..........................................................................................20

*Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971).........................................................................24

*Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106 (D.C. Cir. 2007)................................................24

*Sutton v. I.R.S.*, 2007 WL 30547 (N.D. Ill Jan. 4, 2007) ................................................................23

*Terkel v. AT&T*, 441 F. Supp. 2d 899 (N.D. Ill. 2006) .............................................................15, 16

*Tigue v. U.S. Dep't of Justice*, 312 F.3d 70 (2d Cir. 2002) ...........................................................22

*Twist v. Ashcroft*, 329 F. Supp. 2d 50 (D.D.C. 2004).....................................................................23

*Twist v. Gonzales*, 171 F. App'x 855 (D.C. Cir. 2005)...................................................................23

*United States v. Moussaoui*, 336 F.3d 279 (4th Cir. 2003)..............................................................15

*U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136 (1989) ...........................................................10

*Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973)......................................................................20, 24

*Wilson v. CIA*, 586 F.3d 171 (2d Cir. 2009) ..................................................................................13

*Wilner v. Nat'l Sec. Agency*, 592 F.3d 60 (2d Cir. 2009) .......................................10, 13, 16, 19, 20

*Wood v. FBI*, 432 F.3d 78 (2d Cir. 2005) ......................................................................................10

## *STATUTES*

50 U.S.C. § 1861...........................................................................................................................2, 3

FISA Sunsets Extension Act of 2011, Pub. L. No. 112-3, 125 Stat. 5 (Feb. 25, 2011) ..................2

Foreign Intelligence Surveillance Act of 1978 ("FISA"), 50 U.S.C. § 1801 *et seq.* ......................2

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.* ............................................. passim

USA PATRIOT Act, Pub. L. No. 107-56, 115 Stat. 272 (Oct. 26, 2001) ......................................1

## *LEGISLATIVE MATERIALS*

155 Cong. Rec. S9563 (daily ed. Sept. 17, 2009) (statement of Sen. Russ Feingold)....................3

157 Cong. Rec. S3249 (daily ed. May 24, 2011) (statement of Sen. Patrick Leahy)......................4

157 Cong. Rec. S3259 (daily ed. May 24, 2011) (statement of Sen. Ron Wyden).........................5

157 Cong. Rec. S3346 (daily ed. May 25, 2011) .......................................................................5, 6

157 Cong. Rec. S3360 (daily ed. May 25, 2011) ....................................................................2, 5, 6

157 Cong. Rec. S3386 (daily ed. May 26, 2011) (statement of Sen. Ron Wyden) ....................4, 5

157 Cong. Rec. S3388 (daily ed. May 26, 2011) (statement of Sen. Ron Wyden) .........................5

157 Cong. Rec. S3389 (daily ed. May 26, 2011) (statement of Sen. Mark Udall).........................5

157 Cong. Rec. S3401 (daily ed. May 26, 2011)............................................................................6

## *OTHER AUTHORITIES*

Executive Order 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009)...........................................8, 13, 14, 17

Lieut. Col. Joseph P. "Dutch" Bialke, *Al-Qaeda & Taliban Unlawful*
    *Combatant Detainees, Unlawful Belligerency, and the International Laws*
    *of Armed Conflict*, 55 A.F. L. Rev. 1 (2004) .....................................................................17

Sudha Setty, *No More Secret Laws: How Transparency of Executive Branch Legal*
    *Policy Doesn't Let the Terrorists Win*, 57 U. Kan. L. Rev. 579, 580 (2009) ...................21

Ron Wyden, *Patriot Act: Congress Shouldn't Rush to Judgment (Again)*,
    Huffington Post (Oct. 28, 2009, 6:47 AM) http://www.huffingtonpost.com/
    sen-ron-wyden/patriot-act-congress-shou_b_336504.html. ............................................3, 4

## PRELIMINARY STATEMENT

Plaintiffs The New York Times Company and Charlie Savage (jointly, "NYT") respectfully submit this memorandum of law in support of their motion for summary judgment on their Complaint brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and in opposition to the motion for summary judgment by the Department of Justice ("DOJ").

This action arises from a FOIA request by Mr. Savage seeking a single document: a five-page memorandum submitted to congressional intelligence committees that, among other things, sets forth the Government's interpretation of certain provisions of the USA PATRIOT Act, Pub. L. No. 107-56, 115 Stat. 272 (Oct. 26, 2001) (the "Patriot Act"). The memorandum is classified. Two U.S. senators, upon reviewing the memorandum, said on the Senate floor that the American people would be "alarmed" and "angry" if they knew how the Government was interpreting the statute, which permits the secret gathering of information about citizens in Government investigations related to terrorism or espionage. They decried what they saw as "secret law" being made and enforced by the executive branch and called on DOJ to make the official interpretation of the statute public.

NYT does not seek information about specific national-security investigations. But this document stands on different footing: It contains abstract legal analysis prepared by DOJ about what the Government believes a federal statute to mean and what the Government believes it has the legal authority to do under that statute. Stretching the Government's classification authority to encompass an official interpretation of a statute that will guide the actions of the Government and affect the rights of American citizens is contrary to law, to good public policy, and to common sense.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 2, 2011, the Attorney General and the Director of National Intelligence submitted to congressional intelligence committees a "secret report" (the "DOJ Memorandum") pertaining to the Patriot Act's provisions governing the intelligence-gathering powers of the Government. *See* 157 Cong. Rec. S3360 (daily ed. May 25, 2011) (SA 384(a)(7)). The DOJ Memorandum was forwarded to the committees as Congress deliberated on whether to extend two expiring provisions of the Patriot Act and another expiring provision from a related surveillance law. *Id.*; *see* Foreign Intelligence Surveillance (FISA) Sunsets Extension Act of 2011, Pub. L. No. 112-3; 125 Stat. 5 (Feb 25, 2011). The most controversial of those provisions was Section 215, now codified at 50 U.S.C. § 1861, which allows the FBI to obtain "any tangible things (including books, records, papers, documents, and other items) for an investigation to ... protect against international terrorism or clandestine intelligence activities ..." *Id.* § 1861(a)(1). The DOJ Memorandum is the sole document at issue in this action.

## A.    Congressional Debate on the Patriot Act and Section 215

Section 215 of the Patriot Act has been the subject of widespread public debate since its passage in 2001. The provision significantly expanded the Government's authority to collect business records and other items under the Foreign Intelligence Surveillance Act ("FISA") of 1978, 50 U.S.C. § 1801 *et seq. See* 50 U.S.C. § 1861. Under Section 215, the Government needs only to show "reasonable grounds" that the records it seeks are relevant to an authorized investigation in order to obtain FISA court orders. *Id.* § 1861(b)(2)(A). Those orders are issued under seal and give Government agents access to citizens' personal and business records held by third parties such as credit card companies, hospitals, libraries, and Internet service providers. *Id.* § 1861(a)(3). Previously, to obtain such records the Government had to

2

have evidence that the targeted individual was a terrorist or a spy. After the modification of
FISA by Section 215, a more elastic standard was put in place, requiring only a showing that the
items sought are "relevant" to a national-security investigation. *Id.* § 1861 (b)(2)(A).

Citizens whose information is the target of Section 215 orders are not told that
their records have been turned over to the Government. *Id.* § 1861(d). Entities served with the
orders are legally prohibited from disclosing the surveillance. *Id.*

Because of the secrecy attendant to the Section 215 procedure, a number of
members of Congress have repeatedly urged DOJ to make public its official interpretation of the
law. For example, in a 2009 debate over the Patriot Act, a member of the Senate Intelligence
Committee, then-Senator Russell Feingold, suggested that Section 215 was being interpreted by
DOJ officials in a secret way that "Congress and the American people deserve to know" about.
155 Cong. Rec. S9563 (daily ed. Sept. 17, 2009) (statement of Sen. Feingold).

The following month, in an opinion article about reauthorizing the expiring
portions of the Patriot Act, another member of the Intelligence Committee, Senator Ronald
Wyden, said that he and other senators were asking DOJ to declassify certain "information that
the public and the majority of my colleagues have not seen that, in my judgment, is essential to
understanding the full scope of the issue." His column also warned about reauthorization of
Section 215 without returning to a tighter standard because, he wrote, "the consequences of this
change are tremendous, as there are limitless interpretations of the word 'relevant.' And while it
is known as the 'business records' provision, it actually permits the collection of 'any tangible
thing' (such as blood or DNA samples) as long it can be called 'relevant.'" R. Wyden, *Patriot
Act: Congress Shouldn't Rush to Judgment (Again)*, Huffington Post (Oct. 28, 2009, 6:47 AM)
http://www.huffingtonpost.com/sen-ron-wyden/patriot-act-congress-shou_b_336504.html.

3

In November of that year, Senators Feingold and Wyden, joined by Senator Dick Durbin, released a public letter asking DOJ to declassify information related to the Government's implementation of Section 215. (Declaration of Nabiha Syed, dated March 19, 2012 ("Syed Decl."), Ex. A (letter to Attorney General Eric Holder (Nov. 17, 2009)). DOJ declined to do so. Because the executive branch refused to make public its statutory interpretation, even the few members of Congress who are aware of the interpretation and its potential use to justify collection activity could not air publicly their specific concerns about the interpretation.

In May of 2011, as Section 215 and two other provisions governing intelligence collection were again set to expire, the debate over the secret interpretation flared anew in Congress.[1] Several members of the Senate voiced concerns about extending the provisions unmodified. *See, e.g.,*157 Cong. Rec. S3249 (daily ed. May 24, 2011) (statement of Sen. Patrick Leahy) ("Without a single improvement or reform ... the underlying bill represents a missed opportunity.").

Senator Wyden and Senator Mark Udall voiced concern that Congress itself was in the dark about the Government's interpretation of Section 215 – even as Congress was being asked to re-authorize the law. *See* 157 Cong. Rec. S3386 (daily ed. May 26, 2011) (statement of Sen. Wyden) ("[M]any Members of Congress have no idea how the law is being secretly interpreted by the executive branch because that interpretation is classified. It is almost as if there are two PATRIOT Acts, and many Members of Congress have not read the one that matters."); 157 Cong. Rec. S3389 (daily ed. May 26, 2011) (statement of Sen. Udall) ("I do not believe the government's official interpretation of [our intelligence] laws should be kept secret.

---

[1] The other two provisions set to expire on May 27, 2011 were Section 206 of the USA PATRIOT Improvement and Reauthorization Act of 2005 and Section 6001 of the Intelligence Reform and Terrorism Prevention Act of 2004. All three provisions modified FISA.

This is an important part of our oversight duties...."); 157 Cong. Rec. S3259 (daily ed. May 24, 2011) (statement of Sen. Wyden) ("It is awfully hard to have a thoughtful debate ... if, in fact, you cannot figure out how the executive branch is interpreting the law.").

But the heart of the two senators' concerns was the failure of the Government to forthrightly tell the American public that the Government's interpretation of the law went far beyond the plain language of the statute. *See* 157 Cong. Rec. S3389 (daily ed. May 26, 2011) (statement of Sen. Udall) ("[W]hat most people – including many Members of Congress – believe the PATRIOT Act allows the government to do ... and what government officials privately believe the PATRIOT Act allows them to do are two different things."); 157 Cong. Rec. S3386 (daily ed. May 26, 2011) (statement of Sen. Wyden) ("Our constituents, of course, are totally in the dark. Members of the public have no access to the secret legal interpretations, so they have no idea what their government believes the law actually means."); *id.* at S3388 ("[T]here is a growing gap ... between what the public believes that [the] law says and the secret interpretation of the Justice Department.").

"Americans would be alarmed if they knew how this law is being carried out," Senator Udall said. 157 Cong. Rec. S3389 (daily ed. May 26, 2011) (statement of Sen. Udall). Senator Wyden concurred: "I wish to deliver a warning this afternoon. When the American people find out how their government has secretly interpreted the PATRIOT Act, they are going to be stunned and they are going to be angry." 157 Cong. Rec. S3386 (daily ed. May 26, 2011).

Several senators called for amendments to the reauthorization bill, but nearly all were tabled in the rush for a vote before the relevant provisions expired on May 27, 2011. 157 Cong. Rec S3346 (daily ed. May 25, 2011). The four-year extension was passed without a floor debate or any modification. 157 Cong. Rec. S3401 (daily ed. May 26, 2011).

5

Among the tabled amendments was one submitted by Senators Wyden and Udall
calling for the executive branch to disclose its legal interpretation. 157 Cong. Rec. S3346,
S3360 (daily ed. May 25, 2011) (SA 384). The amendment referenced the DOJ Memorandum,
which had been received by the congressional committees on February 2, 2011 from the
Attorney General and the Director of National Intelligence. *Id.* at (a)(7)-(8). The Wyden-Udall
amendment called for the Attorney General to publicly "detail[] the legal basis for the
intelligence collection activities described in [the DOJ Memorandum]" and to "fully describe[]
the legal interpretations and analysis necessary to understand the United States Government's
official interpretation of [FISA]." *Id.*

The two senators have criticized the Government not only for misinterpreting the
law but also for actively misleading the public. In a letter to Attorney General Holder in
September 2011, they objected to repeated claims by DOJ officials that the Section 215 authority
was simply "analogous to the use of a grand jury subpoena." (Syed Decl. Ex. G (letter from Sen.
Udall and Sen. Wyden to Attorney General Holder (Sept. 21, 2011)). Calling those claims
"highly misleading" in light of the Government's secret interpretation of the statute, they
asserted that DOJ officials were providing "the public with a false understanding of how
surveillance law is interpreted in practice." *Id.*

More recently, while this litigation was pending, the senators again wrote to
Attorney General Holder, challenging DOJ's rationale for keeping the official interpretation of
Section 215 secret: that secrecy is needed to "prevent[] U.S. adversaries from understanding
exactly what intelligence agencies are allowed to do." (Syed Decl. Ex. J.) They also questioned
DOJ's contention that disclosing the Government's legal theory about the scope and limits of
surveillance powers and about the type of collection activity justified under that theory could be

6

expected to cause harm to the national security. *Id.* The senators said that argument would permit the Government to keep all surveillance laws secret. To the contrary, they wrote, "Americans expect their government to operate within the boundaries of publicly-understood law, and as voters they have a need and a right to know how the law is being interpreted so that they can ratify or reject decisions made on their behalf." *Id.*

They also portrayed the executive branch's description of the "actual value of the 'intelligence collection operation' discussed in the Justice Department's [motion to dismiss in this lawsuit] as overstated. *Id.* They wrote that they had once taken at face value the executive branch's assertions about the importance of that operation but had "recently grown increasingly skeptical." *Id.* They criticized intelligence officials for failing to give due regard to the public's "right to know how the law is being interpreted" and for "bypassing traditional checks and balances" by persuading policy makers to defer to them "without carefully considering the issue themselves." *Id.*

## B.    Mr. Savage's FOIA Request

In the wake of the controversy surrounding the reauthorization of Section 215 and other provisions, Mr. Savage submitted a FOIA request to DOJ's National Security Division ("NSD") seeking a copy of the DOJ Memorandum. (Syed Decl. ¶ 4 and Ex. B.) NSD, after granting expedited processing, denied Mr. Savage's request. (Syed Decl. ¶ 9 and Ex. D.) NSD stated that it had found one responsive record – a five-page report – but was withholding the record in full pursuant to FOIA Exemption 1, 5 U.S.C. § 552(b)(1) (relating to national defense or foreign policy information properly classified pursuant to Executive Order No. 13,526). *Id.*

NYT timely filed an administrative appeal. (Syed Decl. ¶ 11 and Ex. E.) When the deadline for a determination passed, NYT commenced this litigation. Subsequently, the

administrative appeal was denied by DOJ's Office of Information Policy ("OIP").

(Syed Decl. 19 and Ex. I.) OIP stated that "[a]ll of the information responsive to ... [Mr.

Savage's] request is classified." *Id.*

## ARGUMENT

At the heart of Plaintiffs' argument is a simple point: The Government's official

interpretation of a public law is not a matter that may be kept secret in the name of national

security. Plaintiffs do not seek information about specific national security investigations.

Instead, they seek access to the Government's official legal interpretation of a federal statute,

Section 215 – including the Government's legal analysis of, for instance, the scope and limits of

its authority to collect information about American citizens under the statute, the types of

information that can be collected pursuant to that section, and the meaning of the "relevancy"

standard in the provision.

The Government does not deny that the DOJ Memorandum contains legal

analysis.[2] Yet it does not cite a single case where legal analysis has been deemed to be a proper

subject for classification as a secret. It does not even address that issue in its memorandum of

law. It is one thing for the Government to keep specific investigations secret; it is another to

allow the Government to keep secret its legal interpretation of a statute that sets out the scope of

its investigative authority.

Through this litigation, Plaintiffs look to the Court to make certain that, in

withholding the DOJ Memorandum, the Government has not overstepped its authority to keep

---

[2] In response to Plaintiffs' averment that the DOJ Memorandum "contains discussion of legal analysis outlining the government's official interpretation of the language of the USA PATRIOT Act" (Complaint ¶ 37), the Government responded, "Defendant can neither confirm nor deny the truth of the allegations of paragraph 37" (Answer ¶ 37.)). While we are not privy to the contents of the DOJ Memorandum, the statements made by Senators Wyden and Udall support the belief that at least some part of the document contains legal analysis.

8

intelligence operations secret and instead misused its powers to prevent American citizens from knowing what they plainly have a right to know: how the Government interprets a statute with important ramifications for the future of personal liberty in this country. To this end, Plaintiffs respectfully request that the Court conduct an *in camera* review of the DOJ Memorandum, and order the Government to release segregable portions of the Memorandum that describe the Government's official legal interpretation of Section 215.

**I.**

## FOIA REQUIRES THE COURT
## TO ENGAGE IN A *DE NOVO*
## REVIEW OF DOJ'S DECISION
## TO KEEP THE MEMORANDUM SECRET

The Government's invocation of a national-security concern does not alter this Court's duty under FOIA to undertake *de novo* review of the decision to withhold the DOJ Memorandum. 5 U.S.C. § 552(a)(4)(B); *see Halpern v. FBI*, 181 F.3d 279, 291 (2d Cir. 1999) (reviewing assertion of national-security exemption in FOIA case and finding Government's declarations inadequate); *Massey v. FBI*, 3 F.3d 620, 622 (2d Cir. 1993); *ACLU v. Dep't of Def.* (*ACLU*), 389 F. Supp. 2d 547, 552 (S.D.N.Y. 2005) (detailing judge's responsibility to examine *de novo* if documents are withheld under national security exemption). FOIA requires the Government to disclose its records unless one of the statutory exemptions applies, and the exemptions are to be narrowly construed. *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989); *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 355-56 (2d Cir. 2005); *Wood v. FBI*, 432 F.3d 78, 83 (2d Cir. 2005); *see also Lawyers Comm. for Human Rights v. Immigration & Naturalization Serv.*, 721 F. Supp. 552, 560 (S.D.N.Y. 1989) (exemptions are "narrowly construed to ensure that Government agencies do not develop a rubber stamp, 'top secret' mentality behind which they can shield legitimately disclosable documents").

Where, as here, an agency has asserted that an entire document may be withheld, the burden is on the agency to show that no part of the document can be released. *See Donovan v. FBI,* 806 F.2d 55, 58 (2d Cir. 1986) (stating that agencies must "segregate their disclosable and non-disclosable portions"); *Wilner v. Nat'l Sec. Agency,* 592 F.3d 60, 69 (2d Cir. 2009) ("The agency asserting the exemption bears the burden of proof, and all doubts as to the applicability of the exemption must be resolved in favor of disclosure"); *Ortiz v. U.S. Dep't of Health & Human Servs.,* 70 F.3d 729, 735 (2d Cir. 1995). The court's review is conducted without deference to the agency's initial determination. *Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.,* 601 F.3d 143, 147 (2d Cir. 2010); *A.T.& T. v. FCC,* 582 F.3d 490, 496 (3d Cir. 2009), *rev'd on other grounds sub nom. FCC v. A.T.& T.,* 131 S. Ct. 1177 (2011); *ACLU v. Dep't of Def.,* 543 F.3d 59, 66 (2d Cir. 2008), *judgment vacated and case remanded to resolve issues unrelated to FOIA,* 130 S. Ct. 777 (2009); *Al-Fayed v. CIA,* 254 F.3d 300, 306-07 (D.C. Cir. 2001).

Those legal standards – which at a minimum require the Government to prove to the Court that no part of a document can be made public – are particularly critical in a case like this where members of the legislative branch have publicly questioned whether the executive branch has exceeded its lawful authority and is misleading the public about how it interprets and acts upon a statute.

## II.

### THE GOVERNMENT HAS FAILED TO CARRY ITS BURDEN OF SHOWING THAT THE DOJ MEMORANDUM CAN BE WITHHELD UNDER FOIA

While we do not question the Government's right to protect legitimate national-security secrets, the Government does a disservice to the adjudicatory process by its public

10

submissions here. They are so conclusory as to prevent a truly meaningful legal response from Plaintiffs and fall below the standard enunciated by the Second Circuit. *See Halpern*, 181 F.3d at 293 (finding that a declaration "completely fails to provide the kind of fact-specific justification that either (a) would permit appellant to contest the affidavit in adversarial fashion, or (b) would permit a reviewing court to engage in effective *de novo* review of the FBI's redactions"). It defies belief that the Government could not in a public filing describe the content of the DOJ Memorandum, address the degree to which it contains abstract interpretation of the law and the legal sources from which that interpretation is drawn, and discuss why the structure of the DOJ Memorandum prevents the disclosure of the legal analysis. None of that would have disclosed any legitimately withheld secrets. But it would have allowed Plaintiffs to address the issues now before the Court with greater precision and depth. The Government's failure to be forthcoming makes even more compelling the need for the Court to do a searching review of the Government's claims that the entire DOJ Memorandum must be withheld either under FOIA Exemption 1 or Exemption 3.

The Court should not infer from DOJ's cursory treatment of the issues that the Government has concluded that the need to keep the DOJ Memorandum secret is a foregone conclusion. To the contrary, the call is close enough that DOJ acknowledged to NYT that it has asked DOJ's Department Review Committee to review the memorandum to determine whether it should remain classified. (*See* Syed Decl. Ex. I.)

By claiming that it may properly keep secret its interpretation of what a law means (and, by extension, what collection activity it is legally authorized to undertake), the Government sails far away from the kind of information that is generally understood to encompass national-security secrets: the existence of secret wiretaps on particular people, the

11

identity of informants, or the specific targets of investigations. While national security might well be enhanced if the public did not have access to the text of FISA and other statutes establishing the scope and limits of the Government's surveillance powers, that is not how things work in our system. Congress made a judgment in enacting FOIA that the greater danger to our democracy would be to allow the Government to suppress the meaning of the laws that constrain its authority. National security is not a perpetual trump card, and when as here the Government overplays its hand in order to keep law secret, the Court plays a critical role in policing the delicate balance between democratic transparency and legitimate security concerns.

## A.    The Government's Authority to Classify Information is not Limitless

The judiciary has the power to independently and searchingly review a classification decision when a court believes that the executive branch may have overstepped its authority and classified as secret what should be public. *See, e.g.*, *Halpern*, 181 F.3d at 295 (declining to accept a "conclusory 'catch-all' assertion" that information is properly classified where Government did not provide "sufficiently specific explanation"); *Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative*, CIV.A. 01-498 RWR, 2012 WL 640882, at \*4 (D.D.C. Feb. 29, 2012) (the Government's "various arguments do not present a logical or plausible explanation for its determination [that disclosure would cause 'damage to the national security'], and the record does not support a reasonable anticipation of harm from disclosure"); *ACLU v. Office of Dir. of Nat'l Intelligence (ACLU II)*, No. 10 Civ. 4419 (RJS), 2011 U.S. Dist. LEXIS 132503, at \*15 (S.D.N.Y. Nov. 15, 2011) (finding that Government has "failed to make the required showing that the information withheld 'logically falls' within Exemption 1" (quoting *Wilner*, 592 F.3d at 73)). These cases have arisen both in the context of FOIA challenges to classifications and in the review of books that former intelligence officers seek to publish. *See,*

12

*e.g.*, *Wilson v. CIA*, 586 F.3d 171, 185 (2d Cir. 2009) ("[I]f the Agency censors a manuscript because it contains classified information, the author is entitled to judicial review of that decision to ensure that the information in question is, in fact, properly classified"); *McGehee v. Casey*, 718 F.2d 1137, 1148-49 (D.C. Cir. 1983) (Courts "must nevertheless satisfy themselves from the record, *in camera* or otherwise," that classification meets the applicable legal standards).

The Court's duty to review a classification decision flows directly from FOIA's general requirement of *de novo* review, 5 U.S.C. § 552(a)(4)(B), and more specifically from the text of Exemption 1 of FOIA, which allows an agency to withhold only such information that is "in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The Executive Order explicitly circumscribes the executive branch's power to classify. *See* Executive Order 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009) (the "Executive Order"). Critical among the limitations contained in the Executive Order is Section 1.7, which prohibits classification of information in order to:

(1) conceal violations of law, inefficiency, or administrative error;

(2) prevent embarrassment to a person, organization, or agency;

(3) restrain competition; or

(4) prevent or delay the release of information that does not require protection in the interest of national security.

There are other important limits. Information may be classified only if it falls within one of the categories of classifiable information set out in Section 1.4;[3] if the original

---

[3] Section 1.4 sets forth the following categories: (a) military plans, weapons systems, or operations; (b) foreign government information; (c) intelligence activities (including covert action), intelligence sources or methods, or cryptology; (d) foreign relations or foreign activities of the United States, including confidential sources; (e) scientific, technological, or economic matters relating to the national security; (f) United States Government programs for safeguarding nuclear materials or facilities; (g) vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection

13

classification authority determines that "disclosure of the information reasonably could be expected to result in damage to the national security;" and if the authority is "able to identify or describe the damage," *id.* § 1.1. Simply put, a document must be declassified unless the Government can demonstrate that disclosure is expected to cause harm and can specify the harm that would result. *King v. U.S. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987).

While a court affords an agency's national-security affidavits "substantial weight," the court must not "relinquish[] [its] independent responsibility" to review classification decisions. *Goldberg v. Dep't of State*, 818 F.2d. 71, 77 (D.C. Cir. 1987); *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998) ("deference is not equivalent to acquiescence"). "To accept an inadequately supported exemption claim 'would constitute an abandonment of the trial court's obligation under the FOIA to conduct a *de novo* review.'" *King*, 830 F.2d at 219 (quoting *Allen v. CIA*, 636 F.2d 1287, 1293 (D.C. Cir. 1980)); *see also United States v. Moussaoui*, 336 F.3d 279, 282 (4th Cir. 2003) (Wilkins, C.J., concurring) ("Siding with the Government in all cases where national security concerns are asserted would entail surrender of the independence of the judicial branch and abandonment of our sworn commitment to uphold the rule of law.").

Similarly, the secrecy provisions of the National Security Act, also relied upon by the Government under FOIA Exemption 3,[4] are not boundless but instead allow secrecy for "intelligence sources and methods." (*See* Declaration of Mark A. Bradley ("Bradley Decl.") ¶ 12.) A number of courts have recognized that while the statutes authorizing classification are

---

services relating to the national security; (h) the development, production, or use of weapons of mass destruction.

[4] Exemption 3 states that FOIA does not apply to matters that are "specifically exempted from disclosure by [another] statute," if that statute (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld . . . 5 U.S.C. § 552(b)(3). Prior to this litigation in dealing with the FOIA request, the Government had cited only Exemption 1.

14

broad, they must still consider whether the information at issue falls within the zone of secrecy necessary to protect "intelligence sources and methods." *See, e.g., Founding Church of Scientology of Wash., D.C. v. Nat'l Sec. Agency*, 610 F.2d 824, 829 (D.C. Cir. 1979) (NSA classification statute, though broadly written, must be construed with "sensitivity to the 'hazard(s) that Congress foresaw'" in passing FOIA); *ACLU II*, 2011 U.S. Dist. LEXIS 132503, at *17-18 (finding that declaration that merely recites statutory language does not show whether the requested FOIA material "relates to 'intelligence sources and methods'"); *Navasky v. CIA*, 499 F. Supp. 269, 274 (S.D.N.Y. 1980) (holding that agency failed to show that materials sought "logically fall into the categories of 'intelligence sources and methods'"); *Terkel v. AT&T*, 441 F. Supp. 2d 899, 905 (N.D. Ill. 2006) (Government cannot claim information about certain activities are secret by merely "assigning these activities to the [National Security Agency] or claiming they implicated information about the NSA's functions").

**B.     DOJ Has Failed to Show that the DOJ Memorandum Is Properly Classified**

The public version of the Bradley Declaration is plainly inadequate under the case law in this Circuit. *See Wilner*, 592 F.3d at 73 (requiring "a *detailed* affidavit showing that the information logically falls within the claimed exemptions" (emphasis added) (quoting *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996))); *King*, 830 F.2d at 218. While the declaration asserts that the DOJ Memorandum contains specific descriptions of the manner and means by which investigators obtain tangible items (Bradley Decl. ¶ 9), it does not address what else it contains – in particular, legal discussion about the scope and limits of its authority to use those means, and other potentially segregable unclassified information. The declaration patently fails to "specifically identify[] the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of [the] withheld document to which they apply." *See King*, 830

15

F.2d at 219 (quoting *Mead Data Cent. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)). FOIA plaintiffs are not forced to shadow-box against Government arguments that are needlessly hidden behind a facile invocation of national-security concerns.

It is not enough for the Government to make its case through the sealed version of the Bradley Declaration. Plaintiffs and the public are entitled to "the most thorough public explanation possible" for the agency's assertion of FOIA Exemption 1. *Lawyers Comm.*, 721 F. Supp. at 568 (ordering the CIA to submit a more detailed supplementary unclassified affidavit). The Government must provide a level of detail that "would permit [the requester]to contest the affidavit in adversarial fashion." *Halpern*, 181 F.3d at 293.

This is not a case where a requester has sought disclosure of specific investigations. Plaintiffs seek access only to legal analysis and legal conclusions. The Government makes no attempt to explain how such content meets the standards set forth in the Executive Order or in National Security Act. Disclosure of the legal interpretation contained in a memorandum sent to Congress could not "reasonably . . . be expected to result in damage to the national security," and DOJ has failed to "identify or describe [any] damage" that could result, as required to invoke Exemption 1. *See* Executive Order § 1.1(a)(4). Likewise, the Government has failed to show how legal arguments and analysis disclose anything about specific and legitimately shielded intelligence sources or methods, as required for invocation of the National Security Act's secrecy provisions under Exemption 3. No obvious logic supports DOJ's position that telling the public how the Government interprets a statute would damage national security or

disclose legitimately confidential information, and the Government's submissions here give us no reason to think otherwise.[5]

In fact, the Bradley Declaration shares the same deficiencies as the declarations rejected as inadequate by the Second Circuit in *Halpern*, 181 F.3d at 293, by courts in this District, *ACLU II*, 2011 U.S. Dist. LEXIS 132503, at \*15-20, 23-30, 36-38; *Associated Press v. U.S. Dep't of Def.*, 498 F. Supp. 2d 707, 711 (S.D.N.Y. 2007); *Lawyers Comm.*, 721 F. Supp. at 567-68, and by courts elsewhere in this Circuit, *El Badrawi v. Dep't of Homeland Sec.*, 583 F. Supp. 2d 285, 314 (D. Conn. 2008).

In *Halpern*, the court declined to credit a declaration that "barely pretend[ed] to apply the terms of [the Executive Order governing classification] to the specific facts of the documents at hand." *Halpern*, 181 F.3d at 293. The public Bradley Declaration does not even go that far; it merely restates the terms of the Executive Order and moves on. (*See* Bradley Decl. ¶ 8); *see also El Badrawi*, 583 F. Supp. 2d at 314 (rejecting summary judgment based on a declaration that "merely restates the standards promulgated in E.O. 13,292"). And like the declaration rejected in *Halpern*, the Bradley Declaration is constructed from conclusory statements that damage would arise from disclosure. (*See* Bradley Decl. ¶ 9); *Halpern*, 181 F.3d at 293 (declaration "completely fails to provide the kind of fact-specific justification" required in FOIA case).

---

[5]  It could well be argued, in fact, that disclosure would *strengthen* the national security by reaffirming the nation's commitment to the rule of law. *See* Lieut. Col. Joseph P. "Dutch" Bialke, *Al-Qaeda & Taliban Unlawful Combatant Detainees, Unlawful Belligerency, and the International Laws of Armed Conflict*, 55 A.F. L. Rev. 1, 3 (2004) ("U.S. national security may be achieved only through a steadfast commitment to the Rule of Law"). Disclosure would either alleviate public concerns arising from two U.S. senators' assertion that the Government "is relying on secret interpretations of surveillance authorities that . . . differ significantly from the public's understanding of what is permitted under U.S. law," or it would end that secrecy and allow the public to express its approval or disapproval through the political process. (*See* Syed Decl. Ex. G (letter from Sen. Wyden and Sen. Udall to Att'y Gen. Holder (Sept. 21, 2011).)

17

Likewise, in *ACLU II*, 2011 U.S. Dist. LEXIS 132503, at *16-20, the court refused to credit declarations (including one by the same declarant relied upon here) that failed "even to identify the provisions of [the] Executive Order … that purportedly applied," depended on the "[m]ere invocation of the exemption statute," and "read more like a policy justification" for classification. In language that could aptly apply to the submissions here, the court said, "By proffering conclusory and nearly identical justifications for various [DOJ] withholdings, the government appears to assume that *de novo* FOIA review requires little more than a judicial spell check." *Id.* at *20.

The district court's critical assessment of the insufficient declaration submitted in *El Badrawi* is also instructive. The declaration in *El Badrawi* asserted only that the withheld document "contains information relating to intelligence sources and methods." 583 F. Supp. 2d at 314. The Bradley Declaration asserts no more than that the withheld document contains "descriptions of the manner and means" of intelligence gathering. (*See* Bradley Decl. ¶ 9.) The *El Badrawi* court found that such generalized incantations thwart the court's mandate to conduct a *de novo* review of the decision to withhold the document. 583 F. Supp. 2d at 314.

Similarly, in *Associated Press*, the district court declined to accept the Government declarant's threadbare warning that disclosure would aid U.S. enemies in "hiding their activities and finding other means to thwart intelligence-gathering efforts." 498 F. Supp. 2d at 711 (finding the language insufficiently particularized and requiring *in camera* review). Yet the Government here tries to rely upon an equally empty blanket assertion: that disclosure of the document would provide adversaries with insights they could use "to develop the means to degrade and evade" United States intelligence gathering activities. (*See* Bradley Decl. ¶ 9.)

## C.    The Possibility of Bad Faith Justifies Close Scrutiny of DOJ's Withholding

Nor should the Court overlook the specific circumstances that gave rise to this
litigation. Two U.S. senators have publicly said that the Government is misleading the public
about its interpretation of a law that allows federal investigators to collect a vast array of private
information about U.S. citizens and others. Central to their concern is a fundamental principle of
the rule of law: that the public has a right to know what powers a government has claimed for
itself and how it interprets the limitations imposed upon it by duly enacted legislation. In
invoking and enforcing the law, it is incumbent upon the Government to deal with citizens in
transparency and good faith, and not through "secret law."

When bad faith is suspected in an agency's decision to withhold information
about agency actions, the courts have taken it upon themselves to look more closely and
critically at the withholding. *See Wilner*, 592 F.3d at 73 (stating that evidence of agency bad faith
can call into question assertions that a withheld document falls within a FOIA exemption); *Jones
v. FBI*, 41 F.3d 238, 242-43 (6th Cir. 1994) (conducting *in camera* review based on evidence of
bad faith in the underlying activities that generated the documents). In *Jones*, the plaintiff sought
access to documents pertaining to the FBI's Counterintelligence Program out of concern that
violations of civil liberties were being concealed. The *Jones* court held that where there is
"evidence of bad faith or illegality with regard to the underlying activities which generated the
documents at issue . . . it would be an abdication of the court's responsibility to treat the case in
the standard way and grant summary judgment on the basis of *Vaughn [v. Rosen,* 484 F.2d 820,
827 (D.C. Cir. 1973)] affidavits alone." *Id.[6]*

---

[6]  In *Vaughn*, the court set the standard for agency affidavits describing documents being withheld under
a FOIA exemption.

19

But whatever the Government's motivation for secrecy here, the withholding of DOJ's legal interpretation raises a fundamental issue of governance: the perniciousness of "secret law." "One of the principal purposes of the Freedom of Information Act is to eliminate secret law." *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 781 (D.C. Cir. 1978) (Bazelon, J., concurring) (citing *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975); *Schwartz v. IRS*, 511 F.2d 1303, 1305 (1975)); *see also Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 869 (D.C. Cir. 1980) ("[T]he public is entitled to know what its government is doing and why"). *Jordan* concerned a FOIA request for manuals and guidelines used by a U.S. Attorney to govern his staff's exercise of prosecutorial discretion. Judge Bazelon stressed that public availability of the requested documents would "assure that the exercise of prosecutorial discretion is . . . consonant with statutory intent." *Id.*

The concern about the evil of "secret law" encompasses not just statutes but also policies and practices of a government. *See Sears*, 421 U.S. at 153 (recognizing the "affirmative congressional purpose to require disclosure of documents that have 'the force and effect of law'" (quoting H.R. Rep. No. 89-1497, at 7 (1966)); *Jordan*, 591 F.2d at 781 (Bazelon, J., concurring) (using the term to describe prosecutorial manuals and guidelines). Just as Judge Bazelon described settled practices governing prosecutorial discretion as "at least as important as any statute to the individual charged with a crime," the same can be said for the legal effect of the DOJ's secret interpretation of the powers of government to investigate citizens under the Patriot Act. *See also ACLU v. Dep't of Def.*, 396 F. Supp. 2d 459 (S.D.N.Y. 2005) (ordering disclosure to the ACLU of a Department of Justice memo to the CIA interpreting the U.N. Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment); Sudha Setty, *No More Secret Laws: How Transparency of Executive Branch Legal Policy Doesn't Let the*

20

*Terrorists Win*, 57 U. Kan. L. Rev. 579, 580 (2009) ("It is feasible, desirable, and realistic to expect the timely disclosure of most Office of Legal Counsel opinions"). For a fuller discussion of the "secret law" issue, NYT respectfully refers the Court to the Memorandum of Law filed by the plaintiffs in the related case, *ACLU v. FBI*, No. 11 Civ 7562.

## III.

## AT A MINIMUM, THE COURT SHOULD ENGAGE IN AN *IN CAMERA* REVIEW OF THE DOJ MEMORANDUM

Because the Government has failed to carry its burden, the DOJ Memorandum should be released to the public. However, if doubts remain about whether disclosure of the entire document is required under FOIA, the Court should exercise its authority to do an *in camera* review to determine whether it is feasible to segregate and disclose those parts of the memorandum that lay out the Government's official legal interpretation of Section 215, including its legal position on the scope and limits of its authority to collect information about American citizens, the types of information that agents are legally authorized by the statute to collect, and the meaning of Section 215's "relevancy" standard.

District courts may initiate *in camera* review at their discretion to assist in analyzing classification decisions. 5 U.S.C. § 552(a)(4)(B). There is no special hurdle to clear for *in camera* inspection: A judge has discretion to order *in camera* inspection "on the basis of an uneasiness, on a doubt he wants satisfied before he takes responsibility for a de novo determination." *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978). The Second Circuit has repeatedly affirmed the power of district courts to conduct *in camera* review at their discretion. *See Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 82 (2d Cir. 2002) (conducting *in camera* review of original memorandum on appeal and upholding district court's decision not to order production of memorandum following *in camera* review); *Grand Cent. Partnership, Inc. v.*

21

*Cuomo*, 166 F.3d 473, 483 (2d Cir. 1999) (upholding district court decision based on *in camera* review and noting that petitioner's argument on appeal did not address the district court's *in camera* review of withheld agency records).

In national-security cases, the power of the court to inspect documents independently is not weakened. As the Second Circuit stated in *Halpern*, 181 F.3d at 295, "deference to …a conclusory 'catch-all' assertion is inappropriate" in an Exemption 1 case. More recently, the court in *Associated Press* undertook a searching review of documents withheld under the national-security exemption after determining that the affidavit submitted by the Department of Defense failed to provide "sufficient particularization as to allow the Court to make any informed determination of whether any given redaction satisfied Exemption 1." 498 F. Supp. 2d at 711. Similarly, the district court in *El Badrawi*, 583 F. Supp. 2d at 314-16, found that it was required to conduct a careful review, *in camera*, of all classified records withheld by the FBI and Department of State, rather than accepting agency affidavits alone. The court articulated the standard for invoking *in camera* review: "have the agencies provided sufficient detail and explanation for their withholdings, so that the plaintiff and the court can evaluate the propriety of the application of the exemptions invoked" and if so, "have the agencies properly applied the exemptions in question." *Id.* at 310.

*In camera* inspection is particularly appropriate here because a single, short document is involved and the Court would not be required to undertake a lengthy and complex review process. *See Twist v. Ashcroft*, 329 F. Supp. 2d 50, 54 (D.D.C. 2004), *aff'd sub nom. Twist v. Gonzales*, 171 F. App'x 855 (D.C. Cir. 2005) (*in camera* review is especially proper when "the number of documents is relatively small"); *see also Sutton v. I.R.S.*, 2007 WL 30547, at *2 n.3 (N.D. Ill Jan. 4, 2007) ("It would seem considerably easier for an agency to submit the

22

documents for in camera review than going through the task of drafting sufficient affidavits, particularly when the withheld documents are limited in number.").

In the public version of its declaration, the Government makes only a naked assertion that any non-exempt information cannot be segregated from classified information. (*See* Bradley Decl. ¶ 11.) Because the Government fails to offer any factual basis for why that is so or to address whether it believes legal analysis can be classified (and therefore need not be segregated), that assertion must be met with skepticism. In the absence of a credible factual or legal basis supporting DOJ's decision not to segregate and disclose, *in camera* review is critical.

In respect to redacting, the law is well established: If any portion of the DOJ Memorandum falls outside FOIA's exemptions, that part must be made public unless it is "inextricably intertwined" with exempt portions. *See, e.g.*, *Donovan*, 806 F.2d at 58 (agencies must "segregate their disclosable and non-disclosable portions"); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) ("before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld"); *Soucie v. David*, 448 F.2d 1067, 1077-78 (D.C. Cir. 1971) (non-exempt material may be protected only if it is "inextricably intertwined" with exempt information). In 1974, Congress expressly incorporated that requirement into FOIA: "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt . . . ." 5 U.S.C. § 552(b).

Those general principles of FOIA apply with full force in national-security cases. "[W]hen materials exempt under the FOIA contain reasonably segregable parts that are not exempt, those parts should be disclosed; the same policy applies to segregable, nonsensitive portions of a classified affidavit." *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381,

23

1388 (D.C. Cir. 1979): *see also Halpern*, 181 F.3d at 294 ("the government, when it invokes Exemption 1, must submit itemized descriptions of the context out of which specific redactions are made").

As outlined in the seminal FOIA decision, *Vaughn,* 484 F.2d at 827, "it is vital that the agency specify in detail which portions of the document are disclosable and which are allegedly exempt." *See also Kimberlin v. Dep't of Justice*, 139 F.3d 944, 950 (D.C. Cir. 1998) (holding that an assertion that entire documents are exempt from disclosure is not sufficient); *Schiller v. NLRB*, 964 F.2d 1205, 1210 (D.C. Cir. 1992) (holding that district court did not hold agency to its obligation to disclose reasonably segregable information and remanding to the district court for a finding on segregability). In *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993), the appellate court remanded for specific findings of segregability, where the description of exempted material was so inadequate that it prevented the court from making a determination of the segregability of non-exempt material. The D.C. Circuit found that "a district court errs if it "'simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof'." *Id.* (quoting *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991)). Consistent with FOIA, redactions must be no greater than necessary to protect exempt information. 5 U.S.C. § 552(b).

## CONCLUSION

For each of these reasons, NYT respectfully asks this Court to (i) grant its cross-motion for summary judgment and deny the Government's motion for summary judgment; (ii) declare that the DOJ Memorandum is public under 5 U.S.C. § 552 and order DOJ to provide the DOJ Memorandum to NYT within 20 business days of the Court's order, or, alternatively, conduct an *in camera* review to determine which portions of the DOJ Memorandum may be

24

segregated for release; (iii) award NYT the costs of this proceeding, including reasonable

attorney's fees, as expressly permitted by 5 U.S.C. § 552(a)(4)(E); and (v) grant such other and

further relief as the Court deems just and proper.

Dated:  New York, NY
        March 26, 2012

Respectfully submitted,

By:  /s/ David E. McCraw
David E. McCraw
Nabiha Syed (admission pending)
Legal Department
The New York Times Company
620 8th Avenue - 18th Floor
New York, NY 10018
phone: (212) 556-4031
fax: (212) 556-1009
e-mail: mccraw@nytimes.com
Counsel for Plaintiffs[7]

---

[7] Alyssa Work, Jane Rosen, and Michael Knobler, students participating in the Media Freedom and Information Access Clinic at Yale Law School, assisted in the preparation of this memorandum of law. Plaintiffs will be seeking leave for them to appear pursuant to the Local Rules of the Southern District of New York.