C54knyta

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

THE NEW YORK TIMES COMPANY,
CHARLIE SAVAGE,

                    Plaintiffs,

            v.                          11 CV 6990 (WHP)

UNITED STATES DEPARTMENT OF
JUSTICE,

                    Defendant.

------------------------------x

AMERICAN CIVIL LIBERTIES
UNION, ET AL.,

                    Plaintiffs,

            v.                          11 CV 7562 (WHP)

FEDERAL BUREAU OF
INVESTIGATION, ET AL.,

                    Defendants.

------------------------------x
                                        New York, N.Y.
                                        May 4, 2012
                                        10:35 a.m.

Before:

                    HON. WILLIAM H. PAULEY III,

                                        District Judge

C54knyta

```
1                                 APPEARANCES

2    DAVID EDWARD MCCRAW
     NABIHA SYED
3         Attorneys for The New York Times Company and Charlie
     Savage
4
     AMERICAN CIVIL LIBERTIES UNION, WOMEN'S RIGHTS PROJECT
5    ALEXANDER ABRAHAM ABDO

6    PROSKAUER ROSE LLP
          Attorneys for ACLU
7    RICHARD INAD HADDAD

8    PREET BHARARA
          United States Attorney for the
9         Southern District of New York
     EMILY EWELL DAUGHTRY
10   JOHN DALTON CLOPPER
          Assistant United States Attorney
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

C54knyta

1              (In open court)

2              THE DEPUTY CLERK:  This is the case of The New York

3       Times Company et al. against United States Department of

4       Justice and the American Civil Liberties Union et al. against

5       the Federal Bureau of Investigation et al.

6              Appearances for the plaintiffs?

7              MR. McCRAW:  Good morning, your Honor.  David McCraw,

8       assistant general counsel for the New York Times Company.  I'm

9       here with my colleague Nabiha Syed.

10             THE COURT:  Good morning, Mr. McCraw.

11             MR. HADDAD:  Good morning, your Honor.  Richard Haddad

12      of Proskauer Rose for Plaintiff ACLU.

13             THE COURT:  Good morning, Mr. Haddad.

14             MR. ABDO:  Good morning, your Honor.  Alex Abdo of the

15      ACLU.

16             THE DEPUTY CLERK:  Appearances for the defendant?

17             MS. DAUGHTRY:  Good morning, your Honor.  Assistant

18      United States Attorney Emily Daughtry for the government.

19             THE COURT:  Good morning, Ms. Daughtry.

20             MR. CLOPPER:  John Clopper from the government.

21             THE COURT:  Good morning, Mr. Clopper.

22             There are motions and cross-motions.  Who wishes to be

23      heard?  Don't all jump up at once.

24             MR. McCRAW:  My understanding, from our conversations,

25      is the government will begin, your Honor.

C54knyta

1          THE COURT:  Very well, Mr. McCraw.

2          MS. DAUGHTRY:  Good morning, your Honor.  My name is

3     Emily Daughtry.  I'm an Assistant United States Attorney for

4     the Southern District of New York, here this morning on behalf

5     of the government.

6          Your Honor, there are two central issues before this

7     Court this morning.  The first is whether the government

8     properly withheld the single document that's at issue in these

9     motions, a classified report describing intelligence collection

10    activities pursuant to FOIA exemption 1, which allows the

11    government to withhold classified information from disclosure.

12    And the second issue is whether the government properly

13    withheld this same single document, pursuant to exemption 3,

14    which allows the government to withhold documents pursuant to a

15    particular statute, in this case the National Security Act,

16    which allows protection of intelligence sources and methods.

17         As the government has explained in its public

18    declarations, the particular report at issue describes an

19    intelligence collection operation.  The government has also

20    explained that the document is properly classified and the

21    government has explained that the release of this document

22    would harm national security because it would provide the

23    United States adversaries with the means to degrade or evade

24    the intelligence-collection activities that are described in

25    the document itself.

C54knyta

```
 1              THE COURT:  Why did the Office of Information Policy
 2    inform The New York Times that it would refer the report to the
 3    DOJ review committee to determine whether the document should
 4    remain classified?
 5              MS. DAUGHTRY:  Your Honor, that was in the context of
 6    a letter regarding the New York Times administrative appeal of
 7    the document, and that is standard procedure for the Office of
 8    Information Policy in any administrative appeal of a classified
 9    document.  But once the case was in litigation, all
10    administrative appeals are dropped, and the government's
11    current position is that the document is currently properly
12    classified.
13              THE COURT:  So the reference of the report is just
14    reflexive?  The government does it every time they receive a
15    request?
16              MS. DAUGHTRY:  My understanding is that as a matter of
17    policy, in and administrative appeal involving a document that
18    has been withheld as classified, they will automatically do
19    this, yes, as a matter of routine.
20              THE COURT:  Is that standard policy memorialized
21    anywhere?
22              MS. DAUGHTRY:  I don't know the answer to that, your
23    Honor.
24              THE COURT:  All right.  If it is, I would invite a
25    letter submission concerning it, because I don't see anything
```

C54knyta

1    in the record about it, and it left me wondering.

2            MS. DAUGHTRY:  I'd be happy to do that.

3            Your Honor, the plaintiffs have made a lot of

4    arguments as to why the government should not withhold this

5    document -- and of course I'm happy to answer any questions the

6    Court has with respect to their arguments -- but the bottom

7    line is that none of them undercut the fact that the

8    government's explanations in its public declarations alone, as

9    well as in its classified submission, are both logical and

10   plausible, which is the standard that has been articulated by

11   the Second Circuit in Wilner.  And the government's

12   declarations are entitled to deference given the national

13   security issues at issue in this particular case, and also too

14   the presumption of good faith that all of the government's

15   declarations are generally accorded in a FOIA case.

16           THE COURT:  Well, do the comments by Senators Wyden

17   and Udall create any specter of bad faith?

18           MS. DAUGHTRY:  They don't, your Honor, they don't.

19   The issue that's relevant for bad faith is whether the

20   government's declarations in invoking the FOIA exemptions were

21   made in bad faith.  And statements by the senators providing

22   views as to whether the government's interpretation of Section

23   215 is at odds with the public's understanding of this statute,

24   are simply not relevant to the issue of whether the government

25   acted in bad faith in asserting in its declarations that the

C54knyta

1    report was classified.

2          And nothing in the record suggests, let alone provides

3    the tangible evidence that's required under the case law, that

4    the government's declarations regarding the invocation of

5    exemptions 1 and 3 were made in bad faith.  And certainly

6    there's no suggestion that the government classified the

7    information in the report for the purpose of concealing any

8    type of illegal activity, which is the standard which is

9    required in Wilner.

10          Furthermore, I would just like to point out that even

11   if the senators had stated directly that it was their belief

12   that this report had been improperly withheld and was not

13   properly classified, even if the senators had submitted a

14   declaration in this action to your Honor, that would not be

15   sufficient to undermine the deference that is due to the

16   executive branch declarations on matters of national security.

17          THE COURT:  How can the public effectively participate

18   in the political process if the government's interpretation of

19   federal law is kept secret?

20          MS. DAUGHTRY:  Well, I guess as an initial matter,

21   your Honor, I would want to point out that the document that's

22   at issue in this particular case is a description of a

23   particular intelligence-collection operation.  As we said in

24   the supplemental Bradley declaration that we submitted with our

25   opposition and reply brief, it does not contain any abstract

C54knyta

1   legal analysis or interpretation of the law, as appears to be

2   envisioned by the plaintiffs, some sort of interpretation that

3   is devoid of factual content.  So what we have here is a

4   particular document that describes a particular intelligence

5   collection operation.

6           To the extent that you're asking hypothetically how

7   can the public participate in a debate if an interpretation of

8   a law is kept secret, if you had a document that had an

9   interpretation of the law that was kept secret, here the public

10  participates by electing members of Congress who provide

11  oversight to the operations that are conducted here.  This

12  particular statute authorizes operations that are authorized by

13  an Article III Court and are fully reported to Congress through

14  the congressional intelligence committees, to the people's

15  representatives.

16          THE COURT:  Anything further, Ms. Daughtry?

17          MS. DAUGHTRY:  I don't think so, your Honor.  I'm

18  happy to clarify anything additional that comes up.

19          THE COURT:  All right.

20          Let me hear from the plaintiffs.

21          MR. McCRAW:  Thank you, your Honor.  I think that your

22  Honor's question provides the appropriate backdrop here, that

23  Senator Wyden said it's awfully hard to have thoughtful debate

24  if in fact you cannot figure out how the executive branch is

25  interpreting the law.  And that's why we are here:  Members of

C54knyta

Congress have said that there is a gap between what the statute appears to say, how the Justice Department communicates what it says, and how they actually act upon it.

We believe that this is one of those cases where in camera review is required.  I say that for three reasons:

First, the government has failed to clearly state whether there is legal analysis here.  That, to me, is a serious omission, because we have made clear from the beginning, that's what this case is about.  We, in our complaint, said that there was legal analysis.  They responded, they could neither confirm nor deny that.

In the briefing here, they have never said that there is legal analysis.  They have always said there is no legal analysis that's segregable.  That combines two things.  Is there legal analysis that's segregable?  And so the first reason I would say in camera review is important here is to just get to that question, which should have been part of their public declarations but isn't:  Is there legal analysis, interpretation of this statute, which shows the scope and the limits the government believes that the statute grants to it?

Second, the government's public declarations have failed to show that under the standard that the government articulated, that it is logical and plausible that legal analysis should be classified.  They have said national security operations, information about national security

C54knyta

1    operations, should be classified.  They have never made that

2    case on legal analysis.  Where is the plausible connection that

3    legal analysis can be withheld under exemption 1 because it

4    would reveal something that's properly classified, or under

5    exemption 3, through the National Security Act?

6         It's not enough for them to simply say this involves a

7    classified intelligence-gathering operation and classified

8    operations are kept secret, exempt from FOIA, therefore, this

9    memo should be.  They haven't said what else is in this memo.

10   We do not dispute their right, the government's right, to

11   withhold information about operations, but they have not made

12   that connection for legal analysis.

13        When I read Wilner and the Second Circuit talks about

14   logical and plausible, I think they're talking more about a

15   philosophy 101 example of classified information should be kept

16   secret, this has some classified information therefore it

17   should be kept secret.  What they're looking for is public

18   declarations in Wilner, public declarations that say, without

19   disclosing secrets, here's what's in the document and here is

20   why it can't be released.  They have not met that standard.

21        The third point I would make here goes to their

22   arguments about segregability.  And, again, the standard is

23   logical and plausible.  Again, they have provided public

24   declarations that never explain why.  What is the structure of

25   this document?  How is it organized?  What about it makes it so

C54knyta

1    that the legal analysis can't be segregated?  That's the burden

2    they have here.

3         I would direct your Honor, in reviewing these

4    affidavits, to two things, or their declarations to two things.

5    At the end of the Halpern case from the Second Circuit, the

6    Court actually reproduces part of the declaration there.  It's

7    an appendix at the end of Halpern.  The Second Circuit says

8    that declaration is insufficient because it simply states

9    conclusory conclusions about why something should be secret.

10   It merely states what the standard is and says this declaration

11   meets the standard.  The Second Circuit said that's not enough,

12   that the reason FOIA was structured to allow de novo review, to

13   allow in camera review, was that we don't simply have to trust

14   the government about these decisions.  That's the first thing I

15   would point your Honor to.

16        The second thing I would point your Honor to is the

17   recent case that was decided by Judge Sullivan, which is an

18   ACLU case, where he found the declarant here, Mr. Bradley, to

19   have submitted a declaration that was insufficient.  In fact,

20   he went so far as to say that the government seems to think

21   that review of the declarations is nothing more than a judicial

22   spellcheck, they have to do more than state what the policy is,

23   they have to do more than state what the standards are.  We

24   pulled that declaration, we looked at it.  It's actually more

25   detailed than the one here.  It's nine pages, it has more

C54knyta

detail, and even then was found insufficient.

I think under those standards -- and we cite others in our brief -- the declarations here have failed to carry the government's burden; and the appropriate remedy for that is in camera review.  It's five pages.  It's not the kind of case where we're asking the Court to look at hundreds of pages of documents.  We think that it's not a case where deference, which the government has spoken to, is due; because if you look at how that deference principle is applied in these cases, it's really deference to the government's determination that national security would be harmed.  It's not deference to something like what's legal analysis, it's not deference to can it be segregated.  We think the courts have equal or greater competence in doing that.  And it's especially necessary here where the government says we're not even sure what legal analysis is.

So we believe that in light of the public record here, in light of the serious issues raised, that the government may be misleading the public, that in camera review is the next appropriate step.

THE COURT:  If in camera review revealed that the document was properly withheld, does it matter if the public declaration from the government is conclusory?

MR. McCRAW:  I think your Honor's in camera review carries the day in the decision.  We obviously have the right

C54knyta

1   to appeal, but ultimately the in camera review carries the day.

2               THE COURT:  Aside from the public statements by

3   Senators Wyden and Udall, do you have any other evidence of bad

4   faith on the part of the government?

5               MR. McCRAW:  No, we don't, your Honor.  And I would

6   speak to the bad-faith point for just a second, which is:  We

7   look at their statements as suggesting that the government is

8   willfully telling the public one thing and doing something

9   else.  But even if that were not so, even if there's no

10  evidence of bad faith, even if there's no evidence of any

11  misconduct, the underlying principle that the public should

12  know how the government is interpreting the law would remain in

13  place.  Whatever the reason it's not being disclosed, the

14  public should know so there can be that kind of informed debate

15  Senator Wyden talks about.

16              THE COURT:  All right.

17              MR. McCRAW:  Thank you, your Honor.

18              THE COURT:  Thank you, Mr. McCraw.

19              Mr. Haddad, do you wish to be heard?

20              MR. HADDAD:  Yes, your Honor.

21              Your Honor, a motion for partial summary judgment

22  presents a simple but important question:  Can the government

23  continue to conceal from the public its legal interpretation of

24  Section 215 of the PATRIOT Act, the public law that governs and

25  constrains the government's interaction with, and its ability

C54knyta

1    to conduct surveillance on, American citizens.

2          As Mr. McCraw said, two United States senators have

3    repeatedly warned that Section 215, which is a public law that

4    affects the rights of American citizens, has been the subject

5    of secret legal interpretation.

6          We believe the five-page memorandum at issue here

7    would shed light upon the government's interpretation of the

8    scope of its surveillance authorities under Section 215.

9          The government significantly, as Mr. McCraw pointed

10   out, has not denied that the memorandum contains legal

11   analysis.  In short, your Honor, we want to know what falls

12   within the phrase "any tangible things."  We want to know how

13   the government defines the threshold of necessary relevance

14   within the meaning of Section 215.

15         The nature of this statute makes it unlikely the

16   targets of this type of surveillance will ever learn of, or

17   have the opportunity to challenge, the provision of their

18   information to the government.  This magnifies the importance

19   of this issue in this case.  In view of that unlikelihood, as

20   well as the senators' statements, the government's refusal to

21   deny that the document contains legal analysis, and the fact

22   this is only a five-page document, your Honor should at the

23   very least conduct a careful in camera review to ensure that

24   all information relating to the government's legal

25   interpretation of Section 215 is released.

C54knyta

1          Now, I just want to emphasize that we aren't asking

2     for the disclosure of ongoing intelligence operations or

3     sources or methods or specific investigations.  We merely seek

4     information relating solely to the government's legal

5     interpretation of the provision, including all portions of the

6     memorandum that describe or convey the government's

7     understanding of the scope of its surveillance authority and

8     the types of information that may be collected pursuant to that

9     authority.

10          We want to know, in short, how broad is the universe

11    of tangible things that the government believes it may collect

12    under this law and how does the government define the threshold

13    of relevance necessary to subject a target to this type of

14    surveillance?  For example, the memorandum may very well

15    reflect that the government believes that it may use Section

16    215 to collect location information regarding the movements of

17    American citizens; it may reflect the fact that the government

18    believes it may collect DNA information from American citizens.

19    We have no idea at this point whether the government views this

20    type of information as tangible things within the meaning of

21    215.

22          And that information, your Honor, is not classifiable.

23    That's why the information that we request comprises the type

24    of secret law the withholding of which FOIA does not allow.  It

25    is secret law because it guides and constrains the government's

C54knyta

1    surveillance authority, and it does have a real, lasting effect

2    on the privacy rights of American citizens.

3              We do not dispute --

4              THE COURT:  Let me ask you this, Mr. Haddad:  On this

5    question of secret law, has any court ever mentioned secret law

6    in the context of exemptions 1 or 3?

7              MR. HADDAD:  Your Honor, since we filed this brief, it

8    has come to our attention that a court in this district,

9    actually Judge Jones, recently addressed the secret-law

10   argument in a FOIA case where the government classified the

11   document at issue under exemption 1.  While Judge Jones

12   ultimately upheld the government's invocation of exemption 1,

13   she did not find or imply that the secret-law doctrine is not

14   applicable in that context.

15             THE COURT:  Well, is there any case that you're aware

16   of in which a court ordered the disclosure of sensitive

17   national security information because it constituted secret

18   law?

19             MR. HADDAD:  There is not, your Honor.  But as we said

20   in our brief, and as the government failed to say in its brief,

21   nor are we aware of any case where the court said that a

22   secret-law analysis is inapplicable in that type of case.

23             THE COURT:  Secret law is not mentioned anywhere

24   within the FOIA exemptions, is it?

25             MR. HADDAD:  No, it's not, your Honor.

C54knyta

1          THE COURT:  Is it your view that secret law would

2     trump a FOIA exemption?

3          MR. HADDAD:  Under certain circumstances, your Honor,

4     that is our view, in view of the underlying purposes behind

5     FOIA, which courts have interpreted as having been passed to

6     eliminate secret law and to inform the public of how the

7     government is operating and why.

8          THE COURT:  Could you describe for me a situation in

9     which, in your view, secret law would trump such an exemption?

10          MR. HADDAD:  Well, I believe this case, your Honor,

11     presents such a situation.  If this memorandum includes

12     portions or sentences that state, for instance, that the

13     government believes it may collect location information

14     regarding the movements of targets pursuant to 215, that would

15     constitute secret law because that is information that reflects

16     the ways in which the government uses its authority and

17     interprets its authority under a public law.  And that type of

18     interpretation is not publicly known.  It's not something that

19     anybody's aware of.  And it goes far from the plain meaning of

20     the statute.

21          THE COURT:  All right.  Anything further, Mr. Haddad?

22          MR. HADDAD:  No, your Honor.  Thank you.

23          THE COURT:  Thank you.

24          Ms. Daughtry, do you wish to be heard very briefly?

25          MS. DAUGHTRY:  I do, your Honor.

C54knyta

1          Thank you, your Honor.  There are a number of points

2     that I would like to address that both Mr. McCraw and

3     Mr. Haddad raised.

4          As an initial matter, both of them have asked the

5     question "does the report contain any legal analysis?" and have

6     suggested that the government has not been clear on this point.

7     I think the government has been very clear.  The report does

8     not contain the type of legal analysis that seems to be

9     envisioned by plaintiffs; that is, legal analysis that is

10    utterly divorced from any factual content.

11         The government has repeatedly said in its declarations

12    that this report describes an intelligence-collection

13    operation.  As we set forth in the supplemental Bradley

14    declaration, the report does refer to the statute, Section 215,

15    that authorizes the intelligence-collection operations

16    described in the report.  And obviously, because the operation

17    is being conducted pursuant to a particular statute, there is

18    an implicit analysis or interpretation of the statute that is

19    inherent in the description of the operation.

20         So, to the extent that you want to consider that legal

21    analysis as set forth in the supplemental Bradley declaration,

22    then that analysis is inextricably intertwined with, and not

23    segregable from, the description of the classified intelligence

24    operation.

25         But I think it's also important to point out that it

C54knyta

1    is the government's position that the distinction between legal

2    analysis and fact is simply not relevant for the purposes of

3    exemption 1.  The only thing that is relevant is whether the

4    information in the report, be it analysis or fact, is properly

5    classified pursuant to the standards set forth in the executive

6    order on classification, Executive Order 13526, and whether an

7    original classifying authority can articulate the harm to

8    national security that would result from the disclosure of that

9    information, and then whether the Court finds that the

10   government's explanation of harm, as set forth in the

11   declaration, is logical and plausible.

12          I would posit that it is certainly logical and

13   plausible that the disclosure of an intelligence-collection

14   operation would allow the United States adversaries to

15   undermine, degrade or evade the intelligence-collection

16   capabilities that are described in the report.

17          With respect to Mr. McCraw's point that the

18   explanations are not logical and plausible, and that the

19   declarations are conclusory, I would point specifically to

20   paragraph 9 of the first unclassified Bradley declaration.  And

21   unlike the appendix in the Halpern case, which Mr. McCraw

22   pointed out, it does not simply restate the standards in the

23   executive order, but if you look at that paragraph, it

24   specifically says that the withheld material contains specific

25   descriptions of the manner and means by which the United States

C54knyta

1      government acquires tangible things for certain authorized

2      investigations, pursuant to Section 215.

3              And in that same paragraph, Mr. Bradley goes on to

4      say:  "Disclosure of these specific descriptions of the manner

5      and means by which the United States acquires these things

6      would provide our adversaries and foreign intelligence targets

7      with insights into the United States government's foreign

8      intelligence-collection capabilities, which, in turn, could be

9      used to develop the means to degrade and evade these collection

10     capabilities."

11             So certainly it is logical and plausible that

12     disclosure of intelligence-collection capabilities can lead to

13     evasion of those intelligence-collection capabilities.  And, I

14     would posit, simply because the logic is simple does not make

15     it conclusory.

16             With respect to the issues raised by Mr. Haddad, I

17     just want to point out that in the Judge Jones opinion, Judge

18     Jones finds that the document that was at issue is in fact not

19     secret law, and she has no discussion one way or the other as

20     to whether secret law is applicable in this particular context.

21     So I think it sheds very little light on this issue.

22             It is, I think, important that Mr. Haddad explicitly

23     said that it is the position of plaintiffs that secret law

24     would trump a valid FOIA exemption.  There is simply no basis

25     in law for that assertion.  Congress has specifically set forth

C54knyta

1    in the FOIA exemptions pursuant to which the government is

2    entitled to withhold information.  And the Supreme Court has

3    specifically stated that all documents must be released under

4    FOIA unless they can be withheld pursuant to a particular FOIA

5    exemption.  And there is nothing in any of the secret law -- in

6    any of the cases that discuss secret law or that use the phrase

7    "secret law," if you look at every single one of those cases,

8    if you look at every single case cited by the plaintiffs in

9    their brief, the analysis done by the court is, does a

10    particular exemption apply, does exemption 5 apply, does

11    exemption 2, which is no longer extant but does exemption High

12    2 apply in deciding whether to withhold a document.

13        And in their analysis of secret law, if a court finds

14    that, yes, something constitutes secret law, it is because it

15    doesn't fall within that exemption.  So if it's within

16    exemption -- if it's under exemption 5, where it commonly comes

17    up -- for example, courts find that it's not withholdable as

18    secret law because it doesn't fit within the exemption because

19    it is no longer predecisional and is operating in fact as an

20    agency's working law.

21        THE COURT:  All right, anything further?

22        MS. DAUGHTRY:  That's it, your Honor.

23        THE COURT:  Thank you, Ms. Daughtry.

24        MR. McCRAW:  Your Honor, could I speak very briefly to

25    those points?

C54knyta

1          THE COURT:  Certainly, Counsel.

2          MR. McCRAW:  I'd just like to make four points in

3    response.

4          One is, the government has mischaracterized what we

5    mean by legal analysis when they say we mean something that's

6    utterly devoid of facts.  We have never said that.  We define

7    legal analysis as scope and limit of the government's

8    authority, types of information, and meaning of relevance.  To

9    some extent in any legal discussion, you're going to have

10   facts.  The question is, does it disclose something that should

11   be classified and must be classified?

12         And that's the second point I would make.

13         The government seems to think that if a disclosure

14   might have some impact on national security, that's enough.

15   That's not enough.  Senator Wyden made an important point.  The

16   PATRIOT Act is public.  There is no question that national

17   security would probably be enhanced if it were secret.  That's

18   not how we work.  There's a balance between transparency, where

19   people know what the law is, and things that need to be secret.

20   Secrecy doesn't trump everything, nor does national security.

21         Third, I simply again direct your Honor's attention to

22   the Halpern declaration.  The very language that was read by

23   counsel, I think, is almost, if not, verbatim in exactly the

24   same spirit as the Halpern appendix.

25         Finally, I just want to address this question of

C54knyta

1   whether secret law trumps exemptions or not.  How we decide

2   that, I think, fairly exotic question of law is beside the

3   point.  The question here is, are the exemptions met?  And if

4   the government hasn't done that, whatever we think about secret

5   law is beside the point.  Our view is they have not shown

6   either that the legal analysis contained in this document is

7   exemption 1 under the executive order or exemption 3 under the

8   National Security Act.

9           Thank you, your Honor.

10          THE COURT:  All right.  Counsel, I want to thank you

11  for your thoughtful arguments and your very well drafted briefs

12  in this matter.  There are some exotic questions embedded in

13  this matter, so decision reserved.

14          Have a good weekend.

15          MR. McCRAW:  Thank you, your Honor.

16                              *  *  *

17

18

19

20

21

22

23

24

25